IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

UNITED STATES OF AMERICA

v.  CRIMINAL NO. 2:18cr34-KS-MTP

MARCO BISA HAWKINS MORAN  18 USC § 1349



**The United States Attorney charges:**

At all times relevant to this Information:

## GENERAL ALLEGATIONS

1. TRICARE, administered by the United States Department of Defense, was a federal health care benefit program that provided health care benefits to members of the United States military, as well as to their families, in addition to military retirees.

2. TRICARE, and other health insurance programs ("Health Care Benefit Providers") were "health care benefit programs" within the meaning of Title 18, United States Code, Section 24(b).

3. Individuals who qualified for Health Care Benefit Provider benefits were commonly referred to as "beneficiaries" or "members."

4. Medical service providers, including hospitals, clinics, physicians, nurse practitioners, and pharmacies ("service providers"), meeting certain criteria, could provide medical services to beneficiaries and members, and submit claims to Health Care Benefit Providers, either in hardcopy or electronically, seeking reimbursement for the cost of services provided.

5. Health Care Benefit Providers provided prescription drug coverage, including prescription coverage for compounded medications, to eligible beneficiaries and members.

6. TRICARE's pharmacy program was administered by Express Scripts, a Pharmacy

Benefit Manager ("PBM"), whose responsibility was to adjudicate and process payment for prescription drug claims submitted by eligible pharmacies.

7. Other Health Care Benefit Providers also contracted with PBMs, including Express Scripts and CVS Caremark, in order to administer their pharmacy benefit programs.

8. In contracting with Health Care Benefit Providers and PBMs, participating pharmacies agreed to adhere to the rules and regulations of the Health Care Benefit Providers and PBMs, which reserved the authority to refuse to reimburse any and all claims not submitted in accordance with its rules and regulations, including requiring all services and items provided to be medically necessary for the treatment of the beneficiary or member.

9. TRICARE, Express Scripts, CVS Caremark, as well as other Health Care Benefit Providers and PBMs, required participating pharmacies to collect copayments from beneficiaries and members, and specified that copayments could not be waived or reduced. Consistent copayment collection was necessary to prevent fraud, as copayments gave beneficiaries and members financial incentives to reject medications that were not medically necessary or had little to no value to beneficiaries' and members' treatments. TRICARE, Express Scripts, CVS Caremark and other Health Care Benefit Providers and PBMs, relied upon participating pharmacies to collect copayments.

10. Compounded medications were drugs that were combined, mixed, or altered from other drugs by licensed pharmacists or other licensed practitioners, pursuant to valid prescriptions issued by licensed medical professionals, including physicians and nurse practitioners (collectively, "prescribers"), to meet the specific needs of individual patients.

11. Prescribers, including licensed physicians and nurse practitioners, could prescribe compounded medications to patients upon considering patients' diagnoses, medical conditions,

health factors, and reactions to other medications, and only after determining that commercially available medications were not as beneficial or potentially inappropriate or harmful to patients.

12. For prescription drugs, including compounded medications, to be appropriately reimbursed, Health Care Benefit Providers required that these drugs be dispensed pursuant to valid prescriptions and be medically necessary for the treatment of covered illnesses. In other words, Health Care Benefit Providers would not reimburse prescription drugs, including compounded medications, which were not medically necessary or dispensed without a valid prescription.

13. Medworx Compounding, LLC ("Medworx"), formed in August 2012, was located in Madison County, Mississippi. Compounding medication was the primary business of Medworx.

14. Custom Care Pharmacy, LLC ("Custom Care"), formed in February 2008, was located in Hinds County, Mississippi. Compounding medication was the primary business of Custom Care.

15. Defendant **MARCO BISA HAWKINS MORAN ("MORAN")**, of Raymond, Mississippi, a licensed pharmacist in the state of Mississippi, co-owned Medworx and owned Custom Care. **MORAN**, on behalf of Medworx and Custom Care, marketed compounded medications to numerous physicians located in Mississippi, including Physician 1.

16. Thomas Edward Spell, Jr. ("Spell"), of Ridgeland, Mississippi, a licensed pharmacist in the state of Mississippi, co-owned Medworx.

17. Co-Conspirator 1 co-owned Medworx.

18. Silas K. Richmond, II ("Richmond"), was a pharmacist in the state of Mississippi, and was the pharmacist in charge of Custom Care.

## COUNT 1

### THE CONSPIRACY AND ITS OBJECT

19. The allegations at paragraphs one through eighteen of this Information are re-alleged and incorporated by reference as though fully set forth herein.

20. Beginning in or around May 2014, and continuing through in or around January 2016, in Lamar County, in the Eastern Division of the Southern District of Mississippi, and elsewhere, the defendant, **MARCO BISA HAWKINS MORAN**, did knowingly and willfully, that is, with the intent to further the object of the conspiracy, combine, conspire, confederate, and agree with Spell, Richmond, Co-Conspirator 1, and other persons known and unknown to the United States Attorney, to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is TRICARE and other Health Care Benefit Providers, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of TRICARE and other Health Care Benefit Providers, in connection with the delivery of and payment for health care benefits, items and services, in violation of Title 18, United States Code, Section 1347.

### PURPOSE OF THE CONSPIRACY

21. It was a purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by, among other things, (a) submitting and causing the submission of false and fraudulent claims to TRICARE and other Health Care Benefit Providers; (b) submitting and causing the submission of claims to TRICARE and other Health Care Benefit Providers based upon materially false and fraudulent pretenses, representations, and promises; and (c) concealing the submission of false and fraudulent claims to TRICARE and other Health Care Benefit Providers.

## MANNER AND MEANS

22. The manner and means by which the defendant and his co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things:

23. **MORAN**, Spell, and Co-Conspirator 1, together with others, formed, owned, and operated Medworx.

24. **MORAN** formed, owned, and operated Custom Care.

25. Spell, Co-Conspirator 1, and others selected compounded medications to market on behalf of Medworx and Custom Care. Rather than formulating compounded medications based on the individualized needs of beneficiaries and members, Spell and others selected formulas for, and interchanged the ingredients of, compounded medications in order to maximize profit based upon reimbursements from TRICARE and other Health Care Benefit Providers.

26. Without having identified the needs of specific beneficiaries and members, **MORAN**, Richmond, Spell, Co-Conspirator 1, and others, on behalf of Medworx and Custom Care, mass-produced these high-yield compounded medications.

27. **MORAN**, Spell, Co-Conspirator 1, and others, on behalf of Medworx, paid marketers, including **MORAN** and Richmond, kickbacks and bribes in order to obtain prescriptions for compounded medications from prescribers, including Physician 1, for beneficiaries and members who were covered by the most lucrative Health Care Benefit Providers, including TRICARE, irrespective of whether the compounded medications were medically necessary for the treatment of beneficiaries and members.

28. **MORAN** and other marketers paid kickbacks and bribes to physicians, including Physician 1, to prescribe these high-yield compounded medications to beneficiaries and members, irrespective of whether the compounded medications were medically necessary for the treatment of beneficiaries and members.

29. Medworx and Custom Care, upon receiving these prescriptions, at the direction of **MORAN**, Spell, Co-Conspirator 1, and others, filled these prescriptions, dispensed compounded medications, and submitted claims to TRICARE and other Health Care Benefit Providers, irrespective of medical necessity and without collecting copayments from beneficiaries and members. Specifically, Medworx and Custom Care, through its owners, routinely waived the copayments of beneficiaries even though **MORAN**, Spell, Co-Conspirator 1, and others knew that TRICARE, other Health Care Benefit Providers, Express Scripts, CVS Caremark, and other PBMs required Medworx and Custom Care to collect beneficiary and members copayments as a condition of reimbursing claims.

30. **MORAN**, Spell, Co-Conspirator 1, and others, on behalf of Medworx and Custom Care, took measures to conceal the waiver of beneficiary and member copayments from TRICARE and other Health Care Benefit Providers, as well as Express Scripts, CVS Caremark, and other PBMs.

31. For example, in or about July 2014, CVS Caremark began auditing Medworx. During the course of the auditing process, CVS Caremark sought documentary evidence that Medworx was collecting copayments from members for compounded medications dispensed and ultimately reimbursed, as per its rules and requirements. In order to conceal the fact that Medworx did not collect copayments on high-yield compounded medications, **MORAN**, on behalf of Medworx, purchased money orders with monies from accounts held and maintained by **MORAN**. **MORAN**, in turn, provided these money orders to Medworx, which applied those funds to receivable accounts involving compounded medications to make it appear as if beneficiaries and members, in fact, paid copayments, when, in reality, Medworx, through reimbursing **MORAN** for the money orders, in actuality, paid the required copayments.

32. At the direction of **MORAN**, Spell, Co-Conspirator 1, and others, Medworx and Custom Care, between approximately May 2014 and January 2016, submitted fraudulent claims to TRICARE and other Health Care Benefit Providers, totaling approximately $22,068,144, representing among other things, that copayments had been collected in connection with dispensing compounded medications, when, in reality, they had not.

All in violation of Title 18, United States Code, Section 1349.

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE

33. Upon conviction of the offense alleged in Count One of this Information, the defendant, **MARCO BISA HAWKINS MORAN**, shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7).

34. The United States will also seek a forfeiture money judgment against the defendant in the amount of $12,195,740.40 which constitutes the value of any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of Count One that the defendant obtained, pursuant to Title 18, United States Code, Section 982(a)(7).

35. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be subdivided without difficulty;

the defendant shall forfeit to the United States any other property, up to the value of the property described above, pursuant to Title 21, United States Code, Section 853(p).

Criminal Forfeiture, in violation of Title 18, United States Code, Sections 982(a)(7), and Title 21, United States Code, 853(p).

_____
D. MICHAEL HURST, JR.
UNITED STATES ATTORNEY