IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**UNITED STATES OF AMERICA**

**v.**                                     **CRIMINAL NO. 2:18-CR-34-KS-MTP**

**MARCO BISA HAWKINS MORAN**

**MEMORANDUM OPINION AND ORDER**

This cause comes before the Court on Defendant's Motion for Reduction of Sentence and Modification of Supervised Release to Include Home Confinement [41], to which the Government has responded [45], and Marco Moran ("Petitioner") has replied [47]. Having considered the parties' submissions, the relevant legal authority, and the record in this matter, the Court finds the motion will be denied.

## I. BACKGROUND

On September 13, 2018, Moran signed a written plea agreement, wherein he pleaded guilty to conspiring to commit health care fraud, in violation of 18 U.S.C. § 1349 contained in a bill of information.[1] [11], [15] at p. 10. On February 2, 2021, Moran was sentenced to 120 months of incarceration followed by three years of supervised release. [35]. Moran was also ordered to pay a $20,000 fine and over $22,000,000 in restitution. *Id*. On February 2, 2022, the Court reduced Moran's sentence to 70 months. [40].

---

[1] The particular scheme involved submitting and causing the submission of false and fraudulent claims involving compounded medications to various health care benefit providers, including TRICARE. [1] at ¶ 21.

In imposing sentence, the Court recommended that Moran be designated to an institution closest to his home for which he is eligible. [35]. According to the Bureau of Prisons (BOP) inmate locator, Moran is a minimum-security inmate housed at the Camp in Yazoo City, Mississippi. He is scheduled for release on January 20, 2026. [47-1]. Moran also states that once his First Step Act time credits have been calculated by the Bureau of Prisons Designation and Sentence Computation Center, he will be eligible for release no later than January 20, 2024. [41] at p. 2.

On August 4, 2022, through his appointed counsel, Moran filed the instant motion [ECF 41] requesting a further reduction in his sentence. Moran seeks to have his sentence reduced to time served under the First Step Act and urges that compelling reasons exist, mainly due to his father's poor health and need for around-the-clock care, as well as his inability to have contact visitation with his nine-year-old son due to the prison conditions at the Camp in Yazoo City, Mississippi. [41] at pp. 4, 6.[2]

## II.  DISCUSSION

### A. Applicable Law

Moran's request is brought under 18 U.S.C. § 3582. The relevant part of that statute says that the Court:

> may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that ... extraordinary and compelling reasons

---

[2] Although Moran requested a video conference hearing, the Court, in its discretion, finds such a hearing unnecessary.

warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A). Thus, to succeed on such a motion, the three requirements of § 3582(c)(1)(A) must be met: (1) there must be "extraordinary and compelling reasons" to warrant a sentence reduction; (2) relief must be consistent with the Commission's applicable policy statements; and (3) the movant must persuade the district court to grant relief after considering the 18 U.S.C. § 3553(a) factors. *See United States v. Hardy*, No. 20-60859, 2022 WL 402429, at *2 (5th Cir. Feb. 9, 2022).

Before the First Step Act was enacted, when only the BOP could seek compassionate release on behalf of a prisoner, courts often looked to the policy statements of the Sentencing Commission to help define what are "extraordinary and compelling reasons." *Id.* at *3. However, with the changes to § 3582(c)(1)(A) and the ability of a prisoner now to file a motion directly with court after exhausting administrative remedies, the Fifth Circuit has held that the Commission's existing policy statement at § 1B1.13 is only applicable to motions brought by the BOP, not prisoners. *See id.* (citing *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021)).

Because the Sentencing Commission has yet to adopt a new policy statement in response to the First Step Act, a prisoner who files a motion for compassionate release needs to show only an "extraordinary and compelling" reason for relief and that a sentence reduction would be consistent with the § 3553(a) factors. *Hardy*, 2022 WL 402429, at *3. "Even though the Commission's guidance at § 1B1.13 is no longer binding on compassionate release motions filed by prisoners, relief must still be consistent with the § 3553(a) factors." *Id*. Indeed, a "district court has discretion to

3

deny compassionate release if the Section 3553(a) factors counsel against a reduction." *United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022) (citing *Ward v. United States*, 11 F.4th 354, 360 (5th Cir. 2021)).

### B. Analysis

#### 1. Exhaustion of Administrative Remedies

Under the federal sentencing statute, a prisoner may not move for compassionate release until the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, there is no dispute from the Government that Moran has exhausted his administrative remedies with the BOP in so far as submitted his request to the FCI Yazoo Warden on June 21, 2022. [41-3]. At the time of Moran's filing the instant motion, over 30 days had lapsed since his request. Therefore, the exhaustion requirement has been met.

#### 2. Extraordinary and Compelling Reasons

Moran posits that his family circumstances involving his father's deteriorating health, the prison conditions that prevent visitation with his son, his cooperation with the Government, as well as his rehabilitation, community service, and time served amount to extraordinary and compelling reasons to warrant a sentence reduction to time served. In support of his arguments, Moran has submitted numerous records, affidavits, and letters, all of which the Court has reviewed.

### a. Need to care for ailing father

As for the care of his father, Moran provided a list of his father's current serious illnesses and submitted a letter from Dr. Brooks, who treats his father, in which Dr. Brooks recommends that the elder Moran receive 24-hour assistance and observation and that his Haven Home Health Care is set to expire soon. [41] at p. 4; [41-5]. Both Dr. Brooks and Moran (via affidavit [41-4]) represent that there is no family member or friend who can provide his father with 24-hour assistance. Moran's siblings are either disabled or estranged, and his aunt, who is his father's only living sibling is 80 years old and cannot help. Moran urges the Court to reduce his sentence to time served and modify his term of supervised release to include home confinement so that he can provide his father the care he needs.[3]

In response, the Government argues that the record does not reflect that Moran is the "only potential caregiver" for his father and that there is no requirement that the caregiver must be a family member. [45] at p. 5. The Government further argues that Moran has failed to present evidence that his family is unable to pay for an outside caregiver or that anyone has looked into other alternatives.

While the Court is no longer bound by the Application Notes to Guidelines Section 1B1.13, the criteria for granting compassionate release on "family circumstances" grounds enumerated in Application Note 1(C) is informative and may guide the Court's analysis. *See United States v. Thompson*, 984 F.3d 431, 433 (5th

---

[3] The Court declines to address Moran's request for home confinement because the Court does not have the authority to order home confinement. *See United States v. Sherrill*, 2021 WL 214684, at *3 (S.D. Miss. Jan. 21, 2021) (citing 18 U.S.C. § 3621(b); *United States v. Dysart*, 66 F. App'x 526, 2003 WL 21018298, at *1 (5th Cir. 2003)).

Cir. 2021). Under Note 1(C), release is authorized only in two limited family circumstances: (i) "the death or incapacitation of the caregiver of the defendant's minor [children]" or (ii) "the incapacitation of the defendant's spouse . . . when the defendant would be the only available caregiver for [that spouse]." U.S.S.G. § 1B1.13, App. Note 1(C). Although the Court has been freed by *Shkambi* to consider the myriad of family circumstances that might warrant granting compassionate release, § 3582(c)(1)(A)(i) still only authorizes release where the family circumstances are truly "extraordinary and compelling," and not merely the inevitable circumstances families face when a family member is incarcerated.

The Court empathizes with Moran's father's situation, and it is truly unfortunate that Moran's incarceration has made him unable to step in and help with his care; but that does not constitute an extraordinary and compelling reason to shorten his otherwise justly deserved sentence, which the Court will address *infra*. And while it is certainly commendable that Moran would like to care for his ailing father, he also asserts that it will use his newly acquired CDL license to work and that he has been offered a six-figure salary driving trucks locally due to high demand for licensed truck drivers. [41] at p. 17. If he is working, he will not be able to provide 24-hour care to his father.[4]

Difficulty in providing personal full-time care for an ailing and aging parent is true for many families, whether prison is a factor in their lives or not. Therefore, this

---

[4] The Court also notes that it learned as a part of the presentence investigation in this case that Moran and his father were estranged for many years, and in recent years Moran described his relationship with his father as "decent." [31] at ¶ 92.

Court finds that Moran's desire to care for his father in his time of need, although certainly laudable, is not "extraordinary and compelling" beyond the facts of what many prisoners and their families face so as to warrant early release.[5]

### b. Inability to visit with his son

Next, Moran describes the circumstances surrounding his incarceration in dealing with the COVID-19 pandemic that has made it virtually impossible to have meaningful visitation with his 9-year-old son, Hawkins. Moran submitted a letter from his former wife, Shemica Marbra Moran, who asserts that their son's lack of visitation with his father due to the facility being on high COVID alert and the continual disappointment after getting his hopes up is causing psychological and emotional harm to Hawkins. [41-6].

The Government contends that while it is unfortunate that Moran cannot embrace his son, general complaints about COVID-19 related lockdowns and limitations on family visitation are not extraordinary and compelling reasons to reduce his sentence or release him.[6]

The Court finds, as it did with regard to the care of an ailing parent, that being separated from friends and family is but a natural consequence of incarceration.

---

[5] The Court has reviewed the cases from other jurisdictions cited by Moran in which the health of elderly parents was at issue; however, in those cases, caring for the parent was not the sole factor upon which the courts relied to grant compassionate release. In any event, there are other "courts [that] have considered compassionate release for the reason of caring for a parent or grandparent but have found such circumstances do not amount to 'extraordinary and compelling' reasons." *United States v. Goodwin*, No. 4:18-CR-00072-DCN, 2022 WL 2047668, at *3 (D. Idaho June 7, 2022)(citing cases).

[6] The Seventh Circuit case cited by the Government in support of its position does not actually address lockdowns or limitations on family visits but rather the defendant's poor health in light of the pandemic. *See United States v. Miller*, 2022 U.S. App. LEXIS 16688 (7th Cir. June 16, 2022).

Again, the Court empathizes with a father being unable to embrace his son and certainly hopes that they have taken advantage of the visitation that is offered.[7] Moran fails to cite any cases from this Circuit that have found that conditions of confinement in dealing with the pandemic were extraordinary or compelling reasons for a sentence reduction, and in the district court cases Moran relies on from other jurisdictions, there is always more to the story than just the conditions of confinement when the court grants the motion.

### c. Other reasons

Moran also urges the Court to consider his cooperation with the Government, his rehabilitation efforts, community service, and the length of time served. However, the Court finds none of these are extraordinary and compelling reasons either individually or when considered together. Moran's cooperation will be addressed later insofar as such contribution has already resulted in a sentence reduction. As for rehabilitation, "'[r]ehabilitation of the [prisoner] alone' cannot justify a reduced sentence." *Jackson*, 27 F.4th at 1090 (citing 28 U.S.C. § 994(t) and *Shkamb*i, 993 F.3d at 390–91).

Also, while Moran's community service is commendable, much of what he accomplished while he was out on bond was already considered by the Court at his time of sentencing. The remorse and deep contrition Moran states that he has

---

[7] At the time of Shemica Marbra Moran's letter in July 2022, she stated that there had been no visitation at all for the majority of Moran's sentence due to the facility being on high alert (Level 3-Code Red). The Court reviewed the visitation procedures at FCC Yazoo City and found that it is now at Level 1, and while it appears there is still a "no contact" restriction in place, there is visitation three days a week. See https://www.bop.gov/locations/insitutions/yaz/ (visited 3/13/23).

demonstrated though utilizing every opportunity for self-betterment is again a noteworthy accomplishment, but it does not diminish the need for just, temporal punishment for the grave crime committed.

Even if Moran has established that the health of his father, the prison conditions preventing meaningful family visitation, as well as these various other reasons are extraordinary and compelling reasons for his early release, the court still would not reduce his sentence because the Court finds that the factors listed in 18 U.S.C. § 3553(a) disfavor a sentence reduction. *See United States v. Coats*, 853 Fed. App'x 941, 943 (5th Cir. 2021).

### 3. Consideration of the Section 3553(a) Factors

As explained previously, a court may still deny compassionate release where the § 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances. *See Jackson*, 27 F.4th at 1089 (5th Cir. 2022). In reviewing 18 U.S.C. § 3553(a), the Court shall consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court must also consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment, deter other criminals, and protect the public. 18 U.S.C. § 3553(a)(2)(A)-(C). The Court must also further consider the kind of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission; and the need to

avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(3), (4), (6).

Moran's offense was conspiracy to commit healthcare fraud. As Moran himself acknowledges, the nature and circumstances of this offense were serious. [41] at p. 14. This case involved defrauding health care benefit providers out of tens of millions of dollars, many of which were federal dollars. "In the course of committing the offense, the defendant abused a position of public and private trust in a manner that significantly facilitated the commission or concealment of the offense." [31] at p.7. The fraud perpetrated by Moran was not a one-time occurrence but a scheme that lasted almost two years. [1] at ¶ 20. The restitution ordered in this case was $22,096,697.37. [35] at p. 6. The amount of property Moran himself obtained, directly or indirectly, from his conduct was $12,195,740.40. [31] at ¶36; [38]. Although not a crime of violence, the gravity of this offense is no laughing matter.

Moran pled guilty on September 13, 2018 and was released on bond. [6], [7]. He remained on bond for over two years until his time of sentencing on February 2, 2021. At the time of sentencing, as the Government points out, Moran had a total offense level of 34 and a criminal history category of I with a guideline imprisonment range of 151 to 188 months; however, the statutorily authorized maximum sentence was ten years, thus the guideline imprisonment term was 120 months. [31] at ¶ 123. The Court sentenced Moran to incarceration for the full ten years (120 months). [35].

Although Moran now touts his cooperation with Government, such cooperation was already considered when the Court reduced his sentence by 50 months to a 70-

month term. [40]. As for time served, he asserts that he has served more than 30% of his sentence, and with earned FSA credits, he will have served more than 50% of his sentence. With such earned FSA credits, he will be eligible for release no later than January 20, 2024. Regardless of the percentages, the way the Court sees it, upon such release Moran will have served 59 months, but to release him now, he will have served 25 months of his original 120-month sentence and only half of his reduced 70-month sentence. Releasing Moran after serving only 25 months minimizes both the impact of his crime and the seriousness of the offense. Requiring Moran to serve the remainder of his sentence would "promote respect for the law," "provide just punishment for the offense," and "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2).

Finally, the Court further finds that requiring Moran to serve the remainder of his sentence is necessary to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). This Court has sentenced numerous defendants involved in these fraudulent claims involving compounded medications submitted to health care benefit providers. The sentences range from 12 months for minor players in the scheme to 216 months for major players. Moran was no minor player.

Again, the Court applauds Moran's initiative in bettering his life through rehabilitation efforts, which the Court hopes will continue after his eventual release. And while the Court sympathizes with Moran's having an ailing father and his inability to have physical contact with his son, Moran is only 49 years old, and his

son is still very young. Having to wait another ten months for release will still allow plenty of time to heal and mend for the time lost while in prison.

## III. CONCLUSION

The Court has considered Moran's motion and reply and the documentation submitted in support thereof, the Government's response, as well as the entirety of the record, and after balancing the relevant § 3553(a) factors, the Court finds that a sentence reduction is not warranted.

Therefore, it is hereby ORDERED that Defendant Marco Bisa Hawkins Moran's Motion for Reduction of Sentence and Modification of Supervised Release to Include Home Confinement [41] is DENIED.

SO ORDERED AND ADJUDGED this 15th day of March 2023.

/s/ Keith Starrett
KEITH STARRETT
UNITED STATES DISTRICT JUDGE